Malcolm A. BERK, Plaintiff-Appellant,

v.

Melvin LAIRD, individually, and as Secretary of Defense of the United States, Stanley S. Resor, individually, and as Secretary of the Army of the United States, and Col. T. F. Spencer, individually, and as Chief of Staff, United States Army Engineers Center, Fort Belvoir, Defendants-Appellees.

No. 900, Docket 35007.

United States Court of Appeals, Second Circuit.

Argued June 17, 1970.

Decided June 19, 1970.

cert denied

Theodore C. Sorensen, New York City (Peter P. Smith, New York City, on the brief), and Leon Friedman, New York City (Burt Neuborne, New York Civil Liberties Union, New York City, on the brief), for plaintiff-appellant.

Norman Dorsen, New York City, for 101 lawyers and law professors, amici curiae.

Edward R. Neaher, U. S. Atty., Eastern District of New York (Robert A. Morse, Chief Asst. U. S. Atty., James D. Porter, Jr., Chief, Civil Division, Asst. U. S. Atty., Cyril Hyman and Robert Rosenthal, Asst. U. S. Attys., Eastern District of New York, on the brief), for defendants-appellees.

Before ANDERSON and FEINBERG, Circuit Judges, and MacMAHON,* District Judge.

ANDERSON, Circuit Judge.

Malcolm A. Berk, a private first class enlisted in the United States Army, received orders on April 29, 1970, requiring him to report to Fort Dix, New Jersey, for dispatch to South Vietnam. On June 3, he commenced on action against the Secretary of Defense, Secretary of the Army, and the officer who signed his orders, contending that these executive officials of the United States Government have exceeded their constitutional authority by commanding him to participate in military activity not properly authorized by Congress. His complaint alleges that these orders violate rights protected by the Fifth, Ninth, Tenth and Fourteenth Amendments to the Constitution, as well as § 5 of the New York Civil Rights Law, McKinney's Consol.Laws, c. 6,[1] and that jurisdiction is appropriate under 28 U.S.C. § 1331(a).[2] Berk seeks a judgment declaring that his superiors are without authority to order him to South Vietnam or Cambodia,[3] and he also demands a permanent injunction forbidding them to do so.

At a hearing on June 5, the district court denied a preliminary injunction on the grounds that the balance of equities inclined toward the Government because, among other reasons, if Berk succeeded in obtaining a preliminary injunction, there would be a flood of similar applications which would have to be granted, thereby causing "a drastic interference with the war effort" by a decision on a preliminary motion. The court also felt that there was "less than an even chance for the plaintiff to succeed even in establishing the right to review in this case."

■ ■ As the appellant correctly points out, the issue on this appeal is not whether the courts are empowered to "second-guess" the President in his decision to commit the armed forces to action, but whether they have the power to make a particular kind of constitutional decision involving the division of powers between legislative and executive branches. See, e.g., Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153 (1952). The appellees' position is essentially that the President's authority as Commander in Chief, in the absence of a declared war, is co-extensive with his broad and unitary power in the field of foreign affairs. See United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 57 S.Ct. 216, 81 L.Ed. 255 (1936); cf. Johnson v. Eisentrager, 339 U.S. 763,

---

* Of the Southern District of New York, sitting by designation.

1. This section provides that:

"No citizen of this state can be constrained to arm himself, or to go out of this state, or to find soldiers or men of arms, either horsemen or footmen, without the grant and assent of the people of this state, by their representatives in senate and assembly, except in the cases specially provided for by the constitution of the United States."

The present statute is based upon the New York Bill of Rights of 1787 (1 N.Y.Laws, 1801 Revision at 48–49) and is identical to Chapter IV, § 4 of the New York Revised Statutes of 1829 (1 N.Y. Rev.Stat. of 1829 at 92). The original derivation of the provision dates to the Petition of Rights (1628 ¶ 1) and the Declaration of Rights, 2 Wm. & Mary c. 2 art. 4 (1689).

2. The complaint also alleges that jurisdiction may be based on 28 U.S.C. § 1332(a) and "5 U.S.C. § 1009(a)" (apparently referring to the provision recently recodified as 5 U.S.C. § 702).

3. Appellant's counsel vigorously argued before the district court that there was a possibility Berk would receive additional orders in the future to take part in military activities in Cambodia, and that the court therefore should give separate consideration to the legality of such orders. The district court properly held this contingency unlikely in view of presidential declarations that American military forces will be removed from Cambodia by June 30, 1970; and the appellant has treated the issues as virtually indistinguishable on this appeal.

789, 70 S.Ct. 936, 94 L.Ed. 1255 (1950) (dictum). If this were the case, Berk's claim would not be justiciable because the congressional power to "declare" a war would be reduced to an antique formality, leaving no executive "duty" to follow constitutional steps which can be judicially identified. See Powell v. McCormack, 395 U.S. 486, 516–518, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); Baker v. Carr, 369 U.S. 186, 198, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). However, the power to commit American military forces under various sets of circumstances is shared by Congress and the executive. History makes clear that the congressional power "to declare War" conferred by Article I, section 8, of the Constitution was intended as an explicit restriction upon the power of the Executive to initiate war on his own prerogative which was enjoyed by the British sovereign. Although Article II specifies that the President "shall be Commander in Chief of the Army and Navy of the United States" and also vests the "executive power" in him and requires that he "take Care that the Laws be faithfully executed," these provisions must be reconciled with the congressional war power. See generally Note, Congress, the President, and the Power to Commit Forces to Combat, 81 Harv. L. Rev. 1771 (1968); Velvel, The Vietnam War: Unconstitutional, Justiciable and Jurisdictionally Attackable, 16 Kan.L.Rev. 449 (1968). Since orders to fight must be issued in accordance with proper authorization from both branches under some circumstances, executive officers are under a threshold constitutional "duty [which] can be judicially identified and its breach judicially determined." Baker v. Carr, *supra*, 369 U.S. at 198, 82 S. Ct. at 700.

 Even if it possesses this general attribute of justiciability, however, a claim still may not be decided if it involves a political question, as that term is defined in Baker v. Carr, *supra*, at 217, 82 S.Ct. 691. The challenge framed at this point by the appellant—"which branch has the power to decide if an order has been issued in violation of the Constitution"—may not be answered by stating that courts alone inevitably pass upon allegations of constitutional violations, as Berk seems to suppose. If the issue involved in this case is "political," Congress and the executive will "decide" whether there has been a usurpation of authority by the latter, through political means.

 The political question doctrine itself requires that a court decline to adjudicate an issue involving "a lack of judicially discoverable and manageable standards for resolving it," Baker v. Carr, *supra*, 369 U.S. at 217, 82 S.Ct. at 710. If the executive branch engaged the nation in prolonged foreign military activities without any significant congressional authorization, a court might be able to determine that this extreme step violated a discoverable standard calling for *some* mutual participation by Congress in accordance with Article I, section 8. But in this case, in which Congress definitely has acted, in part expressly through the Gulf of Tonkin Resolution and impliedly through appropriations and other acts in support of the project over a period of years, it is more difficult for Berk to suggest a set of manageable standards and escape the likelihood that his particular claim about this war at this time is a political question. It may be that he will be able to provide a method for resolving the question of when specified joint legislative-executive action is sufficient to authorize various levels of military activity, but no such standard has as yet been presented to us, although we do not foreclose the possibility that it can be shown at the hearing on the permanent injunction. Even if a distinction can be drawn between offensive and defensive conflicts and if some rather explicit congressional authorization is required for the former, there still remains the problem of determining whether a broad approving resolution followed by non-repeal meets the proposed criterion of "explicit" approval. See United States v.

Sisson, 294 F.Supp. 511, 515 (D.Mass. 1968).

■ Finally, even if Berk is able to show that his claim does not raise an unmanageable political question, he will be required to show the district court that congressional debates and actions, from the Gulf of Tonkin Resolution through the events of the subsequent six years, fall short of whatever "explicit approval" standard he propounds. This will involve a multitude of ⧸considerations concerning which neither the district court nor this court has been adequately informed, and we cannot, in good conscience, now say that the appellant has shown probability of success on the merits if this stage is reached, although once again we do not foreclose the appellant from seeking to establish his claims.

In summary, the appellant raises a claim which meets the general standard of justiciability set out in Powell v. McCormack, *supra*, and Baker v. Carr, *supra*, but must still be shown to escape the political question doctrine. Even though he has perhaps raised substantial questions going to the merits, neither the likelihood of success nor the balance of equities inclines so strongly in his favor that a preliminary injunction is required. Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319 (2 Cir. 1969). As to the latter, we add to the considerations mentioned by the district court the fact that Berk did enlist a year ago presumably fully aware of the Vietnam conflict. The parties have expressed their readiness to proceed immediately, so that additional risks to which Berk might be subjected during the very brief interval before the district court acts are highly speculative. Nor do we see any necessity for Berk's physical presence at or in preparation for the district court proceedings. Berk's absence would not moot the underlying action. The facts concerning Berk on which the action is predicated are undisputed and there remain only the basic legal and constitutional issues and facts relevant thereto.

■ Berk's jurisdictional allegation relying on 28 U.S.C. § 1331(a) has been challenged; but the complaint can be construed as putting in controversy his future earning capacity, which serious injury or even death might diminish by an amount exeeding $10,000. See Friedman v. International Ass'n of Machinists, 95 U.S.App.D.C. 128, 220 F.2d 808, 810, cert. denied, 350 U.S. 824, 76 S.Ct. 51, 100 L.Ed. 736 (1955); Walsh v. Local Bd. No. 10, 305 F.Supp. 1274, 1275–1276 (S.D.N.Y.1969); cf. St. Paul, Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938); Eisen v. Eastman, 421 F.2d 560, 566–567 (2 Cir. 1969). Sovereign immunity is no bar to this action, since the complaint alleges that agents of the Government have exceeded their constitutional authority while purporting to act in the name of the sovereign. Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 689–691, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). The requested relief does not require affirmative governmental action, but only that the agent involved cease certain allegedly improper conduct. Id. at 691, n. 11, 69 S.Ct. 1457; cf. State of Washington v. Udall, 417 F.2d 1310, 1317–1318 (9 Cir. 1969). Although the rule has long been that the alleged "illegality" of a war may not be raised as a defense to prosecution for refusal to submit to induction into the armed forces, United States v. Mitchell, 369 F.2d 323 (2 Cir. 1966), cert. denied, 386 U.S. 972, 87 S. Ct. 1162, 18 L.Ed.2d 132 (1967); United States v. Bolton, 192 F.2d 805 (2 Cir. 1951), this court indicated in *Bolton* that "any question as to the legality of an order sending men to Korea to fight in an 'undeclared war' should be raised by someone to whom such an order has been directed." 192 F.2d at 806 (dictum). The rule should be the same for a soldier ordered to Vietnam under allegedly similar circumstances.

The denial of a preliminary injunction is affirmed and the case is remanded to the district court for further proceedings consistent with this opinion. The

current stay of the military orders detaching appellant to South Vietnam shall expire and the mandate shall issue seven days from the date hereof to allow appellant to seek further relief in the Supreme Court. It is also suggested that the proceedings in the district court on the underlying action proceed with expedition.

So ordered.