George **KLINKHAMMER** et al.,
Plaintiffs,

v.

Elliot **RICHARDSON**, Secretary of Defense, et al., Defendants.

No. 4-73 Civ. 71.

United States District Court,
D. Minnesota,
Fourth Division.

May 30, 1973.

Tilsen, Heffernan & Wells by Donald J. Heffernan, St. Paul, Minn., for plaintiffs.

Robert G. Renner, U. S. Atty. by Stephen G. Palmer, Asst. U. S. Atty.,

**68**

and Allan A. Ryan, Jr., Captain, U. S. Marine Corps Reserve, for defendants.

NEVILLE, District Judge.

The plaintiffs, Minnesota members of the Ready Reserve component of the United States Marines, have brought this joint action to challenge the validity of the Marine Corps' regulation proscribing the wearing of a short hair wig at Reserve drills. The plaintiffs have endeavored to wear such wigs in order to keep their hair long as civilians in accordance with contemporary hair fashions and yet maintain the outward appearance of short hair at reserve drills to conform with the Marine hair regulation. This hair regulation, which applies to both active and reserve forces, provides that:[1]

> "Hair shall be worn neatly and closely trimmed. It shall be clipped at the sides and back so as to present an evenly graduated appearance. The hair on top must not be over 3 inches in length. Long or conspicuous sideburns are prohibited."

It will be noted the regulation does not explicitly prohibit a short hair wig. Brig. General William H. Lanagan, the Director of the Marine Corps Reserve, and Major B. W. Braswell, the commanding officer of plaintiffs' reserve unit, testified however that the regulation uniformly on the basis of an orally adopted policy is interpreted to prohibit the use of short hair wigs. The court therefore accepts the proposition that such wigs presently are prohibited.

The case is before the court on the plaintiffs' application for a preliminary injunction which by stipulation was consolidated with a hearing on the merits pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure. The court heard the testimony of a number of witnesses, including the four plaintiffs, General Lanagan, and Major Braswell. The plaintiffs contend that the anti-wig regulation exceeds the Marine's statutory and constitutional authority inasmuch as plaintiffs spend such a small percentage of their time, sixteen hours per month, or less than 3% of their time (except for summer camp) as reservists. They move this court to declare the regulation invalid, to enjoin any disciplinary action for its past or future violation, and to award costs. The plaintiffs also urge the court to denominate this case a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The government has defended the case on the merits, but also has contested vigorously the plaintiffs' asserted jurisdictional basis, including 28 U.S.C. § 1331(a), 28 U.S.C. § 1361, 1346(a), and 5 U.S.C. § 702. Pending the outcome of this action, the court issued a temporary restraining order and enjoined the defendants from taking any adverse action against the plaintiffs as Reservists who have worn or wear short hair wigs but which so far as the record shows otherwise conform with the Marine hair regulation.[2]

*I. Jurisdiction.*

The court believes that it is appropriate to consider the question of jurisdiction at some length because of the detailed brief submitted by the government. As to whether jurisdiction is present under 28 U.S.C. § 1331(a),[3] the so-called "federal question" provision, the only disputed issue is whether the

1. Marine Corps Order 1020.34B, ¶ 1101, dated April 22, 1966, as amended.

2. The initial temporary restraining order, which was issued by Judge Lord of this court on February 2, 1973 and extended by this court at the April hearing, enjoined the defendants from issuing any unsatisfactory absences (Us) or initiating involuntary activation proceedings "relating to the wearing of wigs at Reserve meetings" pending further order of this court.

3. 28 U.S.C. § 1331(a) provides:
"The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000 exclusive of interest and costs, and arises under the Constitution, laws or treaties of the United States."

$10,000 jurisdictional amount is met. Although the $10,000 requirement in "federal question" cases has been criticized and some courts recently have questioned its constitutionality,[4] neither the Supreme Court nor the Eighth Circuit have abandoned it. *See* Lynch v. Household Finance, 405 U.S. 538, 92 S. Ct. 1113, 31 L.Ed.2d 424 (1972); Potter v. Meier, 458 F.2d 585 (8th Cir. 1972); Spears v. Robinson, 431 F.2d 1089 (8th Cir. 1970). The burden of pleading and, when challenged, of supporting jurisdictional facts "by competent and preponderant proof" is upon the plaintiff. Hedberg v. State Farm Mutual Automobile Ins. Co., 350 F.2d 924, 929 (8th Cir. 1965).

Although the general rule is easy enough to state, it can be difficult to apply, especially to an action involving the alleged deprivation of constitutional rights. These rights are among our most valuable and prized possessions; yet they are not always susceptible to precise monetary quantification. Courts have followed a variety of approaches to cope with the problem of translating the intangible value of constitutional rights into dollar amounts. A few courts have embraced the position that constitutional rights are "inherently priceless" and by definition exceed in value the $10,000 jurisdictional amount. *See e. g.* Harris v. Kaine, 352 F.Supp. 769 (S.D.N.Y. 1972); Cortright v. Resor, 325 F.Supp. 797 (S.D.N.Y.1971), aff'd on other grounds, 447 F.2d 245 (2d Cir. 1971). Some courts have adopted the opposite view and have held that a cause of action for the alleged deprivation of constitutional rights cannot meet the $10,000 requirement because those rights are not precisely quantifiable. *See e. g.,* Goldsmith v. Sutherland, 426 F.2d 1395 (6th Cir. 1970), cert. denied, 400 U.S. 960, 91 S.Ct. 353, 27 L.Ed.2d 270 (1970); Yahr v. Resor, 339 F.Supp. 964 (E.D.N.C. 1972).

A number of courts have taken a middle ground between these two approaches in which they have attempted to ascribe a monetary value to the particular deprivation alleged in a given case. *See e. g.,* Bauer v. McLaren, 332 F.Supp. 723 (S.D.Iowa 1971); Fifth Avenue Peace Parade Committee v. Hoover, 327 F.Supp. 238 (S.D.N.Y.1971); Armendariz v. Hershey, 295 F.Supp. 1351 (W. D.Tex.1969), and Berk v. Laird, 429 F. 2d 302 (2d Cir. 1970). For purposes of such an evaluation the Eighth Circuit has set forth the rule that "The value of the right which is sought to be enforced by the suit determines the amount in controversy". Bishop Clarkson Memorial Hosp. v. Reserve Life Ins. Co., 350 F.2d 1006 (8th Cir. 1965). In that case, the court broadly construed the right in question, the right to information contained in certain hospital records, and considered the potential monetary loss flowing from the failure to uphold that right.

Moreover, those courts which have attempted to value constitutional rights for jurisdictional purposes generally articulate the view that it is better to err on the side of a high valuation lest the plaintiff be left without a forum in which to air his grievances. Judge Stephenson of the Eighth Circuit, at the time sitting by assignment on the United States District Court of Iowa, indicated that such a view reflected "the policy underpinning the plain implication of the Supreme Court's recent reaffirmation of the principle that 'where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant

---

4. The Second Circuit termed the $10,000 requirement an "unfortunate gap in the statutory jurisdiction of the federal courts." Wolff v. Selective Service Local Board No. 16, 372 F.2d 817, 826 (2d Cir. 1967). More recently, the constitutionality of the $10,000 requirement has been questioned by Judge Edelstein's dissent in Boyd v. Clark, 287 F.Supp. 561 (S.D. N.Y.1968), aff'd, 393 U.S. 316, 89 S.Ct. 553, 21 L.Ed.2d 511 (1968); Cortright v. Resor, 325 F.Supp. 797 (S.D.N.Y. 1971), and Murray v. Vaughn, 300 F. Supp. 688 (D.C.R.I.1969).

the necessary relief.'" Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Bauer v. McLaren, 332 F.Supp. 723 at 726 (S.D.Iowa 1971). See also Fifth Avenue Peace Parade Committee v. Hoover, 327 F.Supp. 238 (S.D.N.Y. 1971); Murray v. Vaughn, 300 F.Supp. 688 (D.C.R.I.1969), and Garmon v. Warner, 358 F.Supp. 206 (W.D.N.C., J. McMillan, 1973).

■ The court finds that the $10,000 jurisdictional amount is met in this case when the legal principles set forth above are applied to the facts. The government initially argues that the court can only consider the value of the right to be enforced which allegedly is the esthetic value of long hair, not the consequences of involuntary activation, and that this right has no monetary value. It is the court's view that the right to be enforced in these cases is the right of *Marine reservists* to wear short hair wigs to reserve drills so as to maintain satisfactory participation at these drills and thereby avoid involuntary activation. This court must look to the loss occasioned by disobeying the regulation in question if it be invalid i. e., the threat of involuntary activation.

The government has advanced an argument against jurisdiction in the event the court considers the consequences of involuntary activation. The government's cross-examination of the plaintiffs revealed that when their current civilian earnings are contrasted with their military benefits and pay on active duty that the resulting disparity amounts to substantially less than $10,-000.[5] The government therefore contends that the requisite jurisdictional amount is not present. The court believes that the government's focus is too narrow. The economic impact of activation cannot be limited to a comparison of relative pay scales. Removal from family is a consequence. Dislocation from a civilian job for one or two years

can severely hinder advancement or permanently preclude the possibility of regaining similar opportunities at a future date. Similarly, deleterious economic consequences can ensue for plaintiff Engfer, for instance, who is a full time student and works part time and would be required to abandon both. Moreover, the government's analysis completely overlooks the less tangible but, equally, if not more onerous, losses and inconveniences which involuntary activation entails. The activated reservist faces the ordeal of active military service and the regimented existence which obviously is not compatible with the plaintiffs' current life styles. He is uprooted from his home and thrust into a completely different environment. Clearly the freedoms inherent in civilian life, as contrasted to the spartan demands of the military, have a substantial economic value. The Eighth Circuit does not require that the alleged loss in question be susceptible to precise monetary quantification. It is this court's conclusion that the plaintiffs' loss of their right to wear long hair in civilian life, and the economic, social and psychological losses attributable to involuntary activation meet the $10,000 jurisdictional requirement. The court is not alone in its thinking, and a number of courts have found the jurisdictional amount satisfied in analogous situations. *See e. g.* Garmon v. Warner, No. 4–73 Civ. 71, 358 F.Supp. 206 (W.D.N.C.1973); Berk v. Laird, 429 F.2d 302 (2d Cir. 1970); Armendariz v. Hershey, 295 F.Supp. 1351 (W.D.Tex.1969).

The plaintiffs also assert several other jurisdictional bases for their actions. Having found jurisdiction present under 28 U.S.C. § 1331(a), the court need not consider these other jurisdictional claims in detail. The court has however had the benefit of reading a recent opinion by the Honorable Robert Van Pelt of the United States District Court of Nebraska in Miller v. Acker-

---

5. The figures range from $4,000 loss for Pvt. Klinkhammer to a $1,500 surplus for Sgt. David Engfer.

man, Cv. 73–L–121, (D.Neb. April 30, 1973), wherein it was held under similar circumstances that the court had jurisdiction under the mandamus statute 28 U.S.C. § 1361[6]. This court subscribes to this view as a further ground to support its jurisdiction. Other claimed grounds for jurisdiction need not be considered.

██ The final procedural question before the court is whether these actions should be adjudged a class action under Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs seek to establish two classes: a class of those who already have received unsatisfactory drill ratings for wearing a wig to drills and a class of those who would like to wear a wig to future drills. Rule 23(a)(1), which sets forth one of the prerequisites of a class action, requires that the class be so numerous that joinder of all members is impracticable. As this court stated in Vernon J. Rockler & Co. v. Graphic Enterprises, Inc., 52 F.R.D. 335 at 339–340 (D.Minn.1971):

> "Rule 23(a)(1) precludes any class action unless, 'the class is so numerous that joinder of all members is impracticable' . . . . [T]he term 'impracticable' . . . does not refer to impossibility but only to difficulty or inconvenience. . . . [T]o allow the present litigation to proceed by way of individual intervention would pose a substantial if not intolerable burden on the court and its facilities."

Joinder is clearly not impracticable here. Unlike many class actions, the potential class members here are all recorded on files at the reserve unit. Moreover, all class members gather together once a month for drills, and thus can be notified easily. This decision if and when final, should establish a precedent and for practical purposes be as effective as a class action would be in any event.

The plaintiffs' request to turn these cases into a class action therefore is denied.

## II. ·The Merits.

██ Judge Lord, a member of this court, recently ruled that an Army reserve hair regulation circumscribing the use of the short hair wig though differing somewhat from the Marine regulation exceeds the Army's statutory and constitutional authority. Krueger v. Laird, 4–72 Civ. 321 (D.Minn. Nov. 13, 1972). This court concurs in that decision. Therefore, the salient question now before the court is whether the Marine's sphere of legitimate authority vis-a-vis proscription of the short hair wig is any greater than that of the Army Reserve. The debate revolves primarily around intangible factors. General Lanagan testified that the Marines consciously seek to differentiate themselves from the other branches of the service by projecting the image of a small, disciplined, elite fighting force. Short hair allegedly encourages the discipline vital to this process. Although the short hair wig allows one to maintain the outward appearance of short hair, the government asserts that an individual who resorts to such devices "knows" that he is different. The government also contends that the use of the short hair wig is incompatible with the Total Force Concept which seeks to encourage closer cooperation between the reserve and active duty components of the various services in a unified national defense effort. Any differentiation between reserve and regular Marine hair regulations, the General testified, would further widen the gulf between them and arouse the ire of Marine regulars. And finally the government maintains that any relaxation of the Marine hair standards will hinder the Marine Reserve recruiting effort by alienating the disciplined individuals the Marines wish to attract.

---

6. 28 U.S.C. § 1361 provides:
   "The district courts shall have original jurisdiction of any action in the nature of a mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

The plaintiffs submit that the asserted justifications advanced by the government are either unsupported by empirical evidence or contrary to actual fact. They argue that a short hair wig is not incompatible with the maintenance of discipline or the Total Force Concept because a wig permits outward conformity with the hair regulation and, in the event of activation, their hair could easily be trimmed. See Freidman v. Froehlke, 470 F.2d 1351 (1st Cir. 1972). Moreover, the plaintiffs contend, with a touch of irony, that hair and other disciplinary regulations are often relaxed in actual combat. The plaintiffs also stress that they seek the right to wear short hair wigs only at reserve drills, not while on active duty at summer camp, combat situations or elsewhere.[7] The plaintiffs finally suggest that short hair wigs are just as likely to help recruiting as to hinder it, and argue that General Lanagan's testimony on the subject of recruiting lacked a proper foundation because of his admitted unfamiliarity with the Marine reserve recruiting situation in Minnesota.

It is the court's view that the Marine Corps Reserve has not presented sufficiently compelling reasons to warrant a different result from that reached in *Krueger*. The Eighth Circuit in Bishop v. Colaw, 450 F.2d 1069, 1075 (8th Cir. 1971), emphasized that the constitutionally protected right to govern one's personal appearance is "a freedom which ranks high on the spectrum of our societal values." The court concurs with *Krueger*'s finding that the military has a valid interest in the personal appearance of reservists but that interest does not extend to the prohibition of short hair wigs if the reservist's hair then otherwise conforms to the applicable regulation. This is not a case where re-

servists have willfully flaunted Marine regulations but instead, is a case where reservists have attempted to satisfy the Marine's personal appearance regulation while, at the same time, asserting constitutionally protected right to govern their personal appearance in the civilian sphere of life. The court is mindful of the fact that the active duty Marine Corps is a smaller fighting force which possesses a certain esprit de corps which may be lacking in other branches of the service, but it does not believe that this factor warrants different treatment with regard to the question of whether reservists may wear short hair wigs to Reserve drills. However high the morale of the Marines on active duty, the court, based on the testimony of the plaintiffs and their commanding officer, seriously questions whether this camaraderie extends to the Marine reservists, many of whose enlistments were probably encouraged by the draft and the war in Viet Nam.

The court is not satisfied that a denial of the Marine reservists' right to wear a short hair wig would rekindle the spirit of the reservists or make the active duty Marines any more cordial or amenable toward their civilian cohorts. Moreover, if the Marine Reserves are able to recruit the men they claim they want, any possible loss of morale engendered by the court's ruling should be of short duration. With the advent of the volunteer army and the demise of the draft, the Marine reserves soon will be comprised of men who really want to be Marines; and, by defendants' own theory, will not wish to wear short hair wigs.[8] The only two courts which have considered the wig issue in the context of the Marine Reservist so far as called to this court's attention similarly have ruled that the prohibition of the short hair wig is con-

---

7. See plaintiffs' Reply Brief page 8 for statement to this effect.

8. The government has made no serious contention nor presented any substantial evidence that the wigs if allowed to be worn do not conform in outward appearance to the hair regulation, though Major Braswell did make some passing reference in his testimony to this subject matter. The court proceeds on the theory that if allowed to be worn the wigs will so conform.

stitutionally and statutorily invalid. Garmon v. Warner, No. 4–73 Civ. 71, 358 F.Supp. 206 (W.D.N.C.1973); Miller v. Ackerman, *supra*. In view of the fact that plaintiffs' complaint is directed only to reserve drills, it is not necessary for the court to express an opinion as to the validity of the regulation in question as applied to Reservists at summer camp or active duty Marines, and so specifically confines its holding to Marine Reservists while attending reserve drills.

Plaintiffs' request for costs are denied in the sound discretion of the trial court. 6 Moore's Federal Practice ¶ 54.75(3.–2), at 1558; Hoffman v. Celebreeze, 405 F. 2d 833, 837 (fn. 1) (8th Cir. 1969).

A separate order has been entered.