**UNITED STATES of America, Plaintiff,**

v.

**VARIOUS ARTICLES OF OBSCENE MERCHANDISE, SCHEDULE NO. 1995, Defendant in Rem.**

**UNITED STATES of America, Plaintiff,**

v.

**VARIOUS ARTICLES OF OBSCENE MERCHANDISE, SCHEDULE NO. 2009, Defendant in Rem.**

**80 Civ. 3433 (CBM), 80 Civ. 4476 (CBM).**

United States District Court,
S. D. New York.

May 14, 1981.

claimants' counterclaim for failure to state a claim upon which relief may be granted and for lack of subject matter jurisdiction, pursuant to Rule 12 of the Federal Rules of Civil Procedure. The claimants have moved for an order pursuant to Rule 15 of the Federal Rules of Civil Procedure permitting them to amend their claim, answer and counterclaim and for an order pursuant to Rule 14 permitting them to serve a third-party complaint on the proposed third-party defendants. For the reasons discussed below, plaintiff's motion is granted and claimants' action is granted in part and denied in part.

*Background*

This action was commenced by the United States (the Government) on June 18, 1980, to obtain the forfeiture and destruction of nineteen allegedly obscene items, including four copies of the June, 1980 issue of *Revolt* (*Revolt* # 6), a Swedish magazine. On July 23, 1980, five of the addressees of the seized copies of *Revolt* # 6, Gay Scene, National Gay Task Force, Bruce Voeller, John M. Cox and Robert A. Roth (the claimants), filed a claim, answer and counterclaim which denies that the copies are obscene, on the ground that they contain serious literary, artistic, political and scientific value, and seeks relief against the Government.

The claimants argue that the overwhelmingly dominant theme of *Revolt* magazine and its reason for being is its coverage of the news and politics of the Gay Rights Movement. Each magazine, they claim, contains the most definitive list available anywhere of the names and addresses of organizations that defend the rights of homosexuals in its major area of distribution, as well as timely news articles from all over the world about events which are of great political interest to homosexuals, particularly those involved in the Gay Rights Movement. Claimants note that they are themselves organizations, publications and individuals who are involved in politics and in serious, non-pornographic journalism on the subject of the civil rights of homosexuals.

John S. Martin, Jr., U. S. Atty., S. D. N. Y. by Susan M. Campbell, Asst. U. S. Atty., New York City, for plaintiff.

Robert A. Roth, New York City, for claimants.

## MEMORANDUM OPINION

MOTLEY, District Judge.

This action, which began as an ordinary suit by the United States for the forfeiture of allegedly obscene magazines, raises several interesting and complex issues regarding the right to sue the United States and its agents for redress of constitutional violations, by virtue of the counterclaim and proposed third-party action brought by several of the addressees of the seized magazines. These addressees, the Claimants, seek declaratory, injunctive and monetary relief against the United States, the Secretary of the Treasury and several customs officials for alleged violations of their due process rights under the First and Fifth Amendments resulting from the Government's failure to translate the foreign language text of the magazines into English before seizing them. The plaintiff, United States of America, has moved to dismiss the

The counterclaim refers to a trial held in this district before Judge Sand on June 27, 1980, in *United States of America v. Various Articles of Obscene Merchandise, Schedule No. 1953.* 80 Civ. 827 (LBS), involving a previous issue of *Revolt* magazine, in which the present individual claimants, Bruce Voeller and Robert A. Roth, were also claimants. Judge Sand ruled that that issue of *Revolt* was not obscene since the Government failed to sustain its burden of providing that the magazine as a whole appealed to the prurient interests or that as a whole it did not have serious literary, artistic, political or scientific value, pursuant to the holding in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).[1]

The counterclaim alleges that the copies of *Revolt* # 6 were seized, and their alleged obscenity determined, without any regard to the serious literary, artistic, political or scientific content of their text. It further alleges that it is impossible for customs officials to consider these factors without the aid of an English translation of the Swedish text of the magazines, or an examination by a person competent in reading Swedish, and that seizure of the magazines without such translation or examination constitutes the denial of due process of law to the claimants, in violation of their First and Fifth Amendment rights. Claimants contest not only the constitutionality of the seizure of the particular issues of *Revolt* involved in the present action but also the constitutionality of the Government's power to seize future issues of *Revolt* without regard to their political content, thereby forcing claimants to continually litigate this issue in the courts.

Claimants request in their counterclaim injunctive relief 1) releasing the four copies of *Revolt* # 6 to them, and 2) enjoining the Government and its agents from making any further seizures of magazines or other works addressed to claimants which contain text in a foreign language, unless and until the Government prepares a complete English language translation of the foreign language text contained in each work so seized.

On July 28, 1980, this court conducted a trial at which none of the claimants appeared because none had been properly notified. By letter dated August 5, 1980, the Government informed claimants' attorney that it was prepared to discontinue the action as to *Revolt* # 6. The Government further advised claimants that it consented to the reopening of the action as to the claimants' counterclaim but would shortly move to dismiss the counterclaim for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.

On September 5, 1980, claimants tendered a copy of an amended answer, claim and counterclaim to the Government which alleges additional jurisdictional statutes and adds requests for relief in the nature of mandamus, for a declaratory judgment declaring that the procedures used by the Government violate claimants' constitutional rights and for an injunction prohibiting the Government from seizing any further issues of *Revolt* without making a determination that the particular issue of the magazine is substantially more obscene than any issue of *Revolt* that has been determined not to be obscene. A subsequent proposed amendment also names as third-party defendants, G. William Miller, as Secretary of the Treasury; Vernon D. Acree, as Commissioner of Customs; Dennis T. Snyder, as Regional Commissioner of Customs, New York Region; Eleanor M. Suske, Chief of the Imports Compliance Branch of the United States Customs Service, New York; Joseph DeNardo, Assistant Chief of the Imports Compliance Branch; and Vincent Ruisi, a Clerk in the Imports Compli-

---

1. In *Miller v. California*, 413 U.S. 15, 24, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419 (1973), the Supreme Court set forth a threefold test for determining whether material is obscene. The article alleged to be obscene must (1) taken as a whole, appeal to the prurient interests, as interpreted by the average person applying contemporary community standards; (2) depict or describe, in a patently offensive way, sexual conduct; and (3) taken as a whole, lack serious literary, artistic, political or scientific value.

ance Branch, New York. The Government refused to consent to the service and filing of the proposed amended counterclaim and third-party complaint because it contends that the amendments should be dismissed on the same grounds as the original counterclaim.

Since claimants' tender of the proposed amended claim, answer and counterclaim and third-party complaint, there have been additional changes in the parties and subject matter involved in this action. The case originally before this court, *United States of America v. Various Articles of Obscene Merchandise, Schedule No. 1995*, 80 Civ. 3433 (CBM), was consolidated with a similar case pending before Judge Goettel, *United States of America v. Various Articles of Obscene Merchandise, Schedule No. 2009*, 80 Civ. 4476 (GLG). The major effects of the consolidation were to add an additional claimant, Baker Memorial Library, to the action and to place in question an additional issue of *Revolt* magazine, the May, 1980 issue (*Revolt # 5*). The Government has not consented to discontinue its forfeiture action against *Revolt # 5*. Claimants filed a claim, answer and counterclaim in the action before Judge Goettel which is identical to that filed in the action before this court.

In addition, by stipulation dated November 3, 1980, the National Gay Task Force withdrew as a claimant and proposed third-party plaintiff. The final change is claimants' request in their Reply Memorandum of Law filed on January 21, 1981, that the court allow them to assert a claim for money damages in their amended claim, answer and counterclaim and third-party complaint, jointly and severally, against three of the proposed third-party defendants, Eleanor M. Suske, Joseph DeNardo and Vincent Ruisi, in the amount of $10,000 for each claimant, for violations of claimants' First and Fifth Amendment rights.

2. The proposed amended claim, answer and counterclaim and third-party complaint allege jurisdiction under 19 U.S.C. § 1305 and 28 U.S.C. §§ 1331, 1343, 1346, 1355, 1361 and 2201. However, since the court finds that the

*Discussion*

## I. Subject Matter Jurisdiction

### A. Injunctive and Declaratory Relief

Claimants' principal basis of alleged jurisdiction is the general federal question statute, 28 U.S.C. § 1331.[2] Section 1331(a) (Supp.1980) provides that the district courts shall have original jurisdiction of civil actions which arise under the Constitution, laws or treaties of the United States, without regard to amount in controversy where the action is brought against the United States or any of its agencies or officials. The Government contends that § 1331 does not confer jurisdiction on this court to hear the claimants' claims because these claims are barred by the Government's sovereign immunity.

It is a well-settled rule, recently affirmed by the Court of Appeals for this Circuit, that an individual cannot sue the United States without its consent, and a waiver of this immunity from suit must be unequivocally expressed. *Doe v. Civiletti*, 635 F.2d 88, 93 (2d Cir. 1980); *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). A plaintiff cannot circumvent this barrier by suing Government officials rather than the Government itself. *Doe v. Civiletti, supra*, 635 F.2d at 93 n. 13. The sovereign immunity doctrine applies to actions seeking declaratory and injunctive relief against the Government. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). In sum, the rule is:

> "A suit . . . seeking specific relief against an officer of the sovereign acting not in any individual capacity but strictly as an official is a suit against the sovereign and absent a waiver of immunity is not maintainable because of the absence of subject matter jurisdiction."

*Estate of Watson v. Blumenthal*, 586 F.2d 925, 929 (2d Cir. 1978).

jurisdictional basis upon which claimants primarily rely, 28 U.S.C. § 1331(a), confers subject matter jurisdiction in this action, there is no need to discuss the applicability of the other statutes.

Since the counterclaim and third-party action seek relief against the Government which exceeds the principal claim, the claimants must demonstrate an independent waiver of sovereign immunity for the counterclaim and third-party action. *See Jacobs v. United States*, 239 F.2d 459 (4th Cir. 1956), *cert. denied*, 353 U.S. 904, 77 S.Ct. 666, 1 L.Ed.2d 666 (1957). Section 1331 is in no way a general waiver of sovereign immunity. *Doe v. Civiletti, supra*, 635 F.2d at 94; *Estate of Watson v. Blumenthal, supra*, 586 F.2d at 932. Thus, in order for § 1331 to confer subject matter jurisdiction in this action, the claimants must establish that the Government in some statute has unequivocally waived sovereign immunity in cases such as this, or that their claims fall under one of the exceptions to the sovereign immunity doctrine.[3]

■ The court holds that sovereign immunity is not a valid defense to claimants' request for declaratory and injunctive relief for violations of their First and Fifth Amendment rights because "[s]overeign immunity is no bar . . . [where] the complaint alleges that agents of the Government have exceeded their constitutional authority while purporting to act in the name of the sovereign." *Berk v. Laird*, 429 F.2d 302, 306 (2d Cir. 1970). *See Dugan v. Rank*, 372 U.S. 609, 621–622, 83 S.Ct. 999, 1007, 10 L.Ed.2d 15 (1963); *Larson v. Domestic and Foreign Commerce Corp., supra*, 337 U.S. at 689–691, 69 S.Ct. at 1461–1462; *Doe v. United States Civil Service Commission*, 483 F.Supp. 539 (S.D.N.Y.1980) (Sovereign immunity did not bar claim that investigatory procedures utilized by the United States Civil Service Commission violated plaintiff's constitutional rights).

In *Berk v. Laird, supra*, the Court of Appeals held that sovereign immunity did not preclude an action brought under § 1331(a) by a private in the United States Army seeking a judgment declaring that his superiors were without authority to order him to South Vietnam and a permanent injunction forbidding them to do so. The complaint alleged that these orders violated rights protected by the Fifth, Ninth, Tenth and Fourteenth Amendments. The court relied on an exception to the doctrine of sovereign immunity set forth in *Larson v. Domestic & Foreign Commerce Corp., supra*, which allows a suit for equitable and declaratory relief against an officer of the sovereign when it is claimed that the officer acted unconstitutionally or beyond his statutory limits, or pursuant to an unconstitutional grant of power. The instant proposed third-party complaint against several Customs officials clearly falls within this exception. The court holds, therefore, that it has subject matter jurisdiction over claimants' request for injunctive and declaratory relief, set forth in their proposed third-party complaint, under § 1331(a). Section 1331(a), however, does not confer subject matter jurisdiction over claimants' counterclaim and proposed amended counterclaim since they are against the United States itself.

**B. Damages**

■ In their Reply Memorandum of Law in support of their motion to amend and in opposition to plaintiff's Motion to Dismiss at page 3, claimants request that the court "allow them to assert a claim under *Bivens v. Six Unknown Agents of the Federal Bu-*

**3.** The Court of Appeals in *Estate of Watson v. Blumenthal, supra*, 586 F.2d at 932, rejected the argument made by claimants in this action that the 1976 amendment of § 702 of the Administrative Procedure Act, 5 U.S.C. § 702, which provides for review of agency action, removed the defense of sovereign immunity from action seeking equitable relief that are brought pursuant to § 1331. The Court also held that the sovereign immunity defense was not negated by the 1976 amendment to § 1331 that abolished the jurisdictional amount requirement in suits against the United States, its agencies and employees acting in their official capacity. *Id.* Although the Third Circuit has reached the opposite conclusion in *Jaffee v. United States*, 592 F.2d 712 (3d Cir.), *cert. denied*, 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979), which held that § 702 waives sovereign immunity in equitable actions brought under § 1331, this court is constrained to follow the Second Circuit's ruling in *Estate of Watson v. Blumenthal, supra*. See Doe v. United States Civil Service Commission, *483 F.Supp. 539, 560 (S.D.N.Y.1980).*

*reau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619, for money damages in their amended claim, answer and counter-claim and third-party complaint...." In *Bivens,* the Supreme Court held that a violation of the Fourth Amendment by federal agents acting under color of their authority gave rise to a cause of action for damages consequent upon the unconstitutional conduct. The decision in *Bivens* also established that a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district courts, pursuant to § 1331, to obtain this award of monetary damages. *Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895 (1978). The court will discuss below the issue of whether claimants have stated a cause of action for damages. It holds here that § 1331 confers subject matter jurisdiction to hear claimants' request for monetary relief.

## II. *Statement of a Claim upon which Relief May Be Granted*

### A. *Injunctive Relief*

The Government contends that claimants' claim for injunctive relief should be dismissed for failure to state a claim upon which relief may be granted because there is no common law or statutory right of action, direct or implied, that entitles them to the relief sought here. The Government makes two points in support of this position. First, it argues that there is no implied right of action under 28 U.S.C. § 1355, the statute which provides for jurisdiction in the district court over forfeiture proceedings, or under 19 U.S.C. § 1305, the statute which governs seizure of immoral articles by Customs. Second, the Government states that the right of action recognized by the Supreme Court in *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, supra,* was one for damages, and not injunctive relief.

▮▮▮ The Government's argument is not persuasive. The Supreme Court recently held that the violation of Fifth Amendment rights by a federal official gives rise

to a cause of action. *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). Claimants, therefore, have no need to rely on an implied right of action under 28 U.S.C. § 1355 or 19 U.S.C. § 1305. The Government's position also ignores the long-recognized equitable powers of a district court to remedy constitutional wrongs. See *Larson v. Domestic & Foreign Commerce Corp., supra; Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 115 (1971); *Hampton Mow Sun Wong,* 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976); *Berk v. Laird, supra; Preston v. Thompson,* 589 F.2d 300 (7th Cir. 1978). When a citizen alleges that his constitutional rights have been violated, and he has no effective means other than the judiciary to enforce these rights, it is presumed that federal courts may use any available remedy to make good the wrong done. *Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946); *Davis v. Passman, supra,* 442 U.S. at 242, 99 S.Ct. at 2275 (1979).

"Under our constitutional system, certain rights are protected against governmental action, and if such rights are infringed by the actions of officers of the Government, it is proper that the courts have the power to grant relief against those actions."

*Larson v. Domestic & Foreign Commerce Corp., supra,* 337 U.S. at 704, 69 S.Ct. at 1468. According to these principles, this court has the power to award claimants injunctive relief to redress the Government's alleged infringement of their right to due process of the law.

There is a limitation, however, on this court's power to order injunctive relief in this action. The Supreme Court in *Larson v. Domestic & Foreign Commerce Corp., supra, (Larson),* after pronouncing the exception to the doctrine of sovereign immunity for suits alleging unconstitutional action on the part of a government officer, set forth the following qualification in a footnote:

"Of course, a suit may fail, as one against the sovereign, even if it is claimed that the officer being sued has

acted unconstitutionally or beyond his statutory powers, if the relief requested cannot be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign or the disposition of unquestionable sovereign property."

*Id.* at n. 11.

This footnote has been the subject of criticism among the courts and commentators. *See Doe v. United States Civil Service Commission*, 483 F.Supp. 539, 561 n. 18 (S.D.N.Y.1980) (and cases and articles cited therein); *Knight v. New York*, 443 F.2d 415, 420 (2d Cir. 1971) (calling *Larson* an "unfortunate opinion"). The Ninth Circuit has avoided the "unfortunate" effect of the *Larson* footnote by construing it to mean only that a suit *may* fail if the relief sought would work an intolerable burden on the government which outweighs considerations of private harm; the footnote "was not intended to preclude in the name of sovereign immunity, all suits for affirmative relief." *Washington v. Udall*, 417 F.2d 1310, 1318 (9th Cir. 1969); *De Lao v. Califano*, 560 F.2d 1384, 1391 (9th Cir. 1977).

In spite of these objections to the footnote in *Larson* and the suggestion by the Ninth Circuit that not all requests for affirmative relief against a governmental officer are barred, this court is compelled to be more cautious in light of this Circuit's indication in *Knight v. New York, supra*, 443 F.2d at 420–21, that the footnote still describes the present state of the law. The Court of Appeals also expressly distinguished between requests for relief that would require a government agent to cease allegedly improper conduct and those that would require affirmative governmental action in *Berk v. Laird, supra*, 429 F.2d at 306, citing footnote 11 in *Larson*.

The court concludes that it must apply the limitation on the sovereign immunity exception noted in *Larson*.[4] Under the decision in *Larson*, the court may order the Government officers to cease any procedures which the court finds are in violation of claimants' constitutional rights. On the other hand, the court is precluded from ordering the Government to take the affirmative action of hiring someone to translate the magazines from Swedish into English, as claimants request. However, this action is in a preliminary stage; the court has yet to consider the merits of claimants' allegations that their constitutional rights were violated by government officials or the equities involved in this action. It would be premature to state with any specificity what forms of equitable relief would be appropriate should claimants prevail on these claims. The court, therefore, will reserve a more detailed consideration of the impact of the *Larson* footnote on the relief to be granted in this action until it has decided the merits of claimants' constitutional claims. The court now holds that claimants have stated a claim upon which injunctive relief—in the form of ordering the government officers to cease unconstitutional conduct—may be granted.

## B. *Declaratory Relief*

The Government contests claimants' request for a declaratory judgment declaring that the customs procedures violate their constitutional rights, on the ground that the request in effect seeks an advisory opinion and, as such, presents no actual case or controversy justiciable by this court.

■ The threshold question in determining whether a plaintiff is entitled to declaratory relief is whether the suit presents an "actual controversy," a requirement imposed by both Article III of the Constitution and the express terms of the Federal Declaratory Judgment Act, 28 U.S.C.

---

4. The court also notes that claimants may not avoid the *Larson* proviso by asserting a cause of action in the nature of mandamus, pursuant to 28 U.S.C. § 1361. The mandamus statute is not a waiver of sovereign immunity. *Doe v. Civiletti, supra*, 635 F.2d at 94; *Estate of Wat-* son v. Blumenthal, supra, 586 F.2d at 935. Therefore, this court has the power to grant injunctive relief against the Government under the mandamus statute only to the extent that the exception to the sovereign immunity doctrine spelled out in *Larson* applies.

§ 2201.[5] *Steffel v. Thompson*, 415 U.S. 452, 458, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974). The federal courts established pursuant to Article III do not have the power to render advisory opinions. They may adjudicate only concrete legal issues, presented in actual cases, not abstractions. *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969). The standard under the Declaratory Judgment Act is similar:

> "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

*Maryland Casualty Co. v. Pacific Coal & Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941), quoted in *Zwickler v. Koota*, 389 U.S. 241, 244 n. 3, 88 S.Ct. 391, 393, n. 3, 19 L.Ed.2d 444 (1967).

The existence of a case or controversy also depends upon whether the persons seeking relief have alleged a sufficient personal stake in the outcome to assure that the court will be called upon to resolve real issues between genuine adversaries. *Abele v. Markle*, 452 F.2d 1121, 1124, (2d Cir. 1971), *vacated on other grounds*, 410 U.S. 951, 93 S.Ct. 1412, 35 L.Ed.2d 683 (1973); *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

■ The court holds that claimants have alleged a sufficiently direct threat of personal detriment to entitle them to seek declaratory relief. *See Doe v. Bolton*, 410 U.S. 179, 188, 93 S.Ct. 739, 745, 35 L.Ed.2d 201 (1973); *Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973). The Government has seized copies of *Revolt* magazine addressed to claimants more than once in the past. It gives no assurance that it will refrain in the future from seizing copies of *Revolt* belonging to claimants in the same manner which claimants challenge as unconstitutional. The essence of claimants' position is that, unless they are awarded equitable or declaratory relief, the Government will seize their copies of *Revolt* every month without regard to the serious literary, artistic, political or scientific value of the magazines. Even if the court decides that a particular issue of *Revolt* is not obscene because of its serious political content, and the magazine is returned to claimants, this decision will have no *res judicata* effect to prevent subsequent seizures. Thus, claimants allege a concrete and direct threat of continuous disruption of their mail delivery by government officials in violation of their First and Fifth Amendment rights. Even if the requested injunctive relief is inappropriate, the court may declare claimants' constitutional rights with respect to the seizure of future issues of *Revolt* magazine.

### C. Damages

The Supreme Court in *Davis v. Passman*, *supra*, 442 U.S. at 245, 99 S.Ct. at 2276, recently affirmed the power of a federal district court to provide relief in damages for violation of constitutional rights. The Court held that a woman who alleged that she had been discriminated against by a United States Congressman on the basis of sex in violation of the Fifth Amendment was entitled to damages in the form of back pay. However, the Court also held that such a remedy would be appropriate only if there are "no special factors counselling hesitation in the absence of affirmative action by Congress." *Id.*, quoting *Butz v. Economou*, 438 U.S. at 504, 98 S.Ct. at 2909.

Since claimants requested leave to add a claim for monetary relief in their reply memorandum, the Government has had an opportunity to respond on the issue of whether a damage award would be appropriate in this action. The court, therefore,

5. Section 2201 provides:

"In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under Section 7438 of the Internal Revenue Code of 1954 or a proceeding under Section 505 or 1146 of Title 11, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

directs the parties to submit memoranda of law and affidavits with respect to this issue, in accordance with the accompanying order.

*Conclusion*

For the reasons discussed above, the court holds that it has subject matter jurisdiction under 28 U.S.C. § 1331(a) to hear claimants' claims for declaratory and equitable relief against the governmental officers named in its proposed pleadings for violations of claimants' constitutional rights. The court also holds that claimants have stated a claim against these officials upon which relief may be granted. Accordingly, claimants' motion for leave to file their proposed third-party complaint is granted. The court, however, denies claimants' motion for leave to amend their counterclaim against plaintiff, United States of America, and grants plaintiff's motion to dismiss the counterclaim since sovereign immunity bars claims for relief against the United States itself.

Finally, the court reserves its ruling as to claimants' request to add a claim for monetary damages to its third-party complaint until the parties have submitted papers on the issue of whether such an award would be appropriate in this action.